May it please the Court. My name is Thomas A. Krause. In 2010, Rick Whitman applied for disability benefits. That same year, Judge Pratt, from the Southern District of Iowa, wrote an article that appeared in the ABA Litigation Journal. Judge Pratt observed that all federal judges begin their careers by taking an oath to do equal right to the poor and rich alike. He also noted the poor most frequently appear before Article III courts in the context of criminal proceedings and in the context of disability appeals. Judge Pratt also noted that disability appeals are of the highest importance, and I would say that's certainly true of my clients generally and for Mr. Whitman. Mr. Whitman is an unfortunate individual. Not only does he have severe health problems, he is poor and lives in rural Iowa. The Court can take judicial notice that Iowa Falls is a town of about 5,000 people. There are few attorneys in Iowa Falls and none that regularly practice in Social Security claims. Not surprisingly, at the time of Mr. Whitman's hearing, he was unrepresented. He also had no health insurance. He was able to obtain minimal care locally. The Court can take notice that under the Iowa CARES program, which was the statewide indigent care program in effect at that time, he would have traveled two hours each way for treatment at the University of Iowa, keeping in mind that he did have a bad back and would have to travel by car. Mr. Whitman's indigent, limited access to medical treatment, and his lack of representation are recurring themes in the three issues raised in this case. Turning briefly to the first two issues and dealing with them concurrently, the ALJ rejected the opinions of Dr. Thomas Graham, the consultative examiner, and also found that Mr. Whitman was not credible. Dr. Graham was an evaluation arranged by the Social Security Administration. Dr. Graham examined Mr. Whitman and Dr. Graham essentially found the claimant was disabled. And then Mr. Whitman's own testimony and the reports that he filed with Social Security were found not credible. The ALJ essentially rejected this evidence for the same reasons. The ALJ's decision is based in large part on the claimant's limited medical treatment. The medical record notes that surgery had only a limited chance of success and so Mr. Whitman occasionally saw a doctor to receive narcotic pain medications. In essence, the ALJ expected Mr. Whitman to spend money he did not have for additional treatment that may or may not help his pain. Let me tell you what troubles me here with this is that the ALJ obviously was the unemployment compensation application where he said to make his application he had to say he was available to work. The ALJ assessed a credibility issue on that. First of all, is that a legitimate basis for ALJ to erode his credibility or is there something wrong with that? This is an administrative proceeding and essentially almost anything can be considered. It's more of a question of weight. We don't believe that it should be given a lot of weight. There is the memorandum from the former, I believe, Chief Administrative Law Judge Cristado that says that this is not an overwhelming piece of evidence. It's not certainly a determinative piece of evidence. You have to look at it as just one piece. I think it's particularly inappropriate to place too much emphasis on an application for unemployment benefits in this case for several reasons. One is Mr. Whitman also filed an application for supplemental security income benefits. He is required as a part of that application to file an application for all other benefits that he may be entitled to, not that he will be entitled to. So if he does not file for unemployment benefits, then he risks losing SSI. Now, his SSI application was eventually denied for resources. He owned two motorcycles. But that is a requirement of the SSI program that would certainly be a factor in determining why is he applying for it. In addition, when a claimant is indigent and has no other income, I have a lot of clients that do file for unemployment benefits. Maybe they can work. They're willing to at least try it. Maybe they can't work. Maybe they do go back to work. The fact that he holds himself out as able and available for work, and we don't have the actual application. There are exceptions to that, I would note, for department-approved training, for example, is just one exception. But we don't have the application. We don't have any statement that actually proves that he did say that he was able and available for work. So I think under these circumstances, that should not be an overriding consideration. What about the ALJ discounting the doctor's opinions because they were more restrictive than what the plaintiff's self-reported activities were at the Iowa Department of Corrections? Well, the self-reported activities were from 2007, and the application was not until 2010. So I don't know that they're necessarily that relevant to what he says later. I mean, if you look at what he filed in 2010 in accordance with or at the time of his application, he is noting then that he says, for example,  and he talks about not being able to do much of anything on a sustained basis. So the older medical records certainly are not necessarily dispositive of what his condition would be three, four years later. You've emphasized here an argument that, well, the difficulty that your client would have in getting medical care for financial reasons, distance from appropriate hospitals. What of that did your client present to the ALJ? So what's in the record that the ALJ could actually consider as to reasons why there was a lack of medical evidence? There are a few questions at the hearing, and I think that goes to the related issue of the heightened scrutiny that should be applied in a case where the claimant is unrepresented at the hearing. So you see the issue more as one that the ALJ should have taken more initiative to find out that information rather than your client having the obligation to offer it up? For an unrepresentative claimant, I would suggest that is correct. And I think it's also important to note that the ALJ did not ask, for example, what can they do for you? And there's no indication that I can see in the record that anything other than pain medication has really been suggested by his doctors. The only other option would generally be to go to the University of Iowa hospitals and clinics two hours away from him. I would like to focus on what we consider to be our primary issue, which is the basis for a remand.  Sentence 4 is basically a decision on the merits where judgment is entered. The ALJ does... Significant new information is in Dr. Manshadi, I guess you say it's? Exactly. Tell me, what new and significant information is there? Well, Dr. Manshadi is the only doctor... Well, in one sense it's not, because in one sense it is consistent with the consultative examination from Dr. Graham. But it does cover a lot of... And Dr. Gorp. Right. But it collects and it puts it all together and gives specific work-related limitations. It's probably one of the most important things. It gives the specific work-related limitations. This includes a complete review of all the medical records. So it is new, it is important. And I think when we're looking at whether this is a case that should be remanded under sentence 4, I think we should look at, Judge Benton, your decision in the Cutthroat case last year where you talk about credible evidence in the context of a psychiatric review technique form. If there's credible evidence, the ALJ needs to look at that, and the error is not harmless. And I think that Dr. Manshadi's report is credible evidence and shows that the error is not harmless. Have you filed a new application, or are you somehow prevented from filing a new application? He has filed a new application. He's been approved on the new application. We're continuing this because he has a date last insured that was covered by the prior application, and he'd get the back benefits plus an ongoing difference of about $100 a month. So he is now covered? He is receiving SSI, the Supplemental Security Income, not the Disability Insurance Benefit. So this is one reason why we're doing the appeal. And with the Court's permission, I would reserve the remainder of my time. Thank you. Good morning, Mr. Sumner. Good morning, Your Honor. You can raise that lectern if you want. Yes. Here we are. I guess that will have to do, Your Honors. May it please the Court. Good morning. My name is Joshua Sumner, and I'm here representing the defendant in this case, Carolyn Colvin, the Acting Commissioner of Social Security. In this case, the ALJ, in weighing the credibility of plaintiff's allegations of disabling pain, noted many factors undermining his claims. An important one of these was plaintiff's failure to regularly seek treatment for his allegedly disabling pain. Now, in his appeal, plaintiff argues that because he lives in rural Iowa and did not have health insurance during the relevant period, that this explains his failure to regularly seek treatment. However, the problem with this argument here in this particular case is that this Court has held that in order for a claimant's finances to be relevant to this credibility factor, a plaintiff must present some evidence from within the record to showing that he sought medical treatment and was denied treatment on the basis of his indigence. What role do you think the ALJ plays in that process, particularly when you have a pro se person there without legal counsel to sort of guide them into presenting that? What role does the ALJ play, in your view, in that situation? I'm sorry. Well, certainly the ALJ plays some role in developing the record, as with the whole case. And in this particular case, I think the record shows that the ALJ actually did develop the record in investigating the failure of plaintiff to seek more regular pain, or excuse me, more regular treatment for his pain. At the administrative hearing, as we touched on a little bit earlier during Mr. Krause's presentation, when the ALJ asked plaintiff, well, there are resources in Iowa available to indigent claimants. Have you sought any of those out, considering your allegations of extreme pain in this case? Plaintiff said, well, I know of those, because back in the past, before the relevant period here in this case, I sought and received treatment for some unrelated, I believe it was a jaw problem, before. But I didn't seek it in here. And the ALJ then, with that information, followed up and asked, well, then, what's stopping you? I think he said something to the effect of, what's stopping you in this case, considering clearly you're alleging extreme pain here, what's stopping you now? And plaintiff said something to the effect of he didn't want surgery, which didn't really give an explanation why. And so the clear- Was that back surgery, counsel? Excuse me? Is that a reference to back surgery? I believe it was, Your Honor. How clear is the reference to back surgery? In the administrative record? Yeah. I believe it's very clear. I believe they were talking about the surgery beforehand. No. When he says, I didn't go get some medical care because I was afraid of surgery, was that back surgery that he was referring to? I'm not certain, Your Honor, but I believe it was. Okay. And was it then explored in any regard about that? A lot of people fear back surgery. Well, certainly, but I think the salient point, Your Honor, if I may, is that even if what plaintiff would have needed if the pain were as extreme as he's alleging in this case with medication, then why did it take him until May of 2011, which was nearly four years after his alleged onset date in this case, to seek that pain management medication or any other sort of treatment outside of the routine prison examination that he received in November 2007? I think that's what the ALJ developed was you haven't sought the type of treatment that one would expect, whether that be. . . Does the record reflect that he's on pain medication? Pardon me for interrupting you. No, you're fine. This just came to the same point. Does the record reflect that he's on pain medication while in prison? It reflects that he was on pain relievers and ibuprofen that he received after that November 2007 prison examination there. However, it also shows at the end, if I may, that when he was released, an Iowa Department of Corrections forum showed that his only pertinent medical problems at that point were hypertension and bronchitis. What was the date he was released? October of 2008, I believe October 22nd. 2001? 2008, so almost one year after his initial incarceration. And then he waited after that, apparently not taking anything besides maybe over-the-counter painkillers, until May of 2011, which was nearly again four years after his alleged onset date in June 2007, and only about one month before his insurance status expired in this case to seek any further treatment. And moreover, when he did seek treatment, the examining physician, Dr. Brunkhorst, found only benign findings, despite his complaints of pain there, including negative straight leg raise testing, that he could walk on his heels and toes, and that he had good reflexes. So really the salient point I think here that the record reflects is that plaintiff rarely sought treatment, really only once outside of prison during the entire about four-year relevant period in this case, and when he did, those examination findings were relatively benign and not suggestive of disabling pain. So really I think the ALJ was correct in being able to rely on that factor, among the many others he cited, as suggesting that plaintiff's pain was not as limiting as alleged. Is this a case where we really are relying largely on an assessment form done by a non-treating physician? Well, respectfully, Your Honor, I don't think it is, because this case is replete with many proper factors that the ALJ considered, considering the evidence of the whole, the poor work history of the claimant in this case, the unemployment insurance application here, plaintiff's self-reported activities, which were actually more strenuous than what the RFC finding was, finally, in the ALJ's decision. I think all these factors, and the state agency doctor's opinions, all support the discrediting of plaintiff's allegations of disabling pain, and, of course, the burden is on plaintiff to show that he has a disabling RFC, not on the commissioner to show what the plaintiff's remaining functional limitations during the relevant period were. And moreover, to the extent that it's helpful to answer your question, it's important to note that the agency regulations promulgated in 2003 make clear that an ALJ's RFC finding is based on all the evidence in the record, such as those factors I just discussed, and doesn't merely have to rely on a medical opinion. And moreover, this court in Martiz, I believe a 2011 case, also similarly recognized the regulatory setup here and made clear that an ALJ need not rely on one particular medical opinion in the record. And so, in summing up the credibility considerations of the ALJ here, I want to make clear that the ALJ had many credibility factors he relied on, as I've outlined, and considering the ALJ's thorough discussion of these many factors, which are supported by substantial evidence in the record, this court should defer to the ALJ's credibility determination, because he was the one who was in the best position in this case to weigh plaintiff's credibility after his review of the evidence. And if I may, real briefly, I wanted to address a plaintiff's argument concerning geography with where he lives in rural Iowa. I would like to point out that the Social Security Act provides for the payment of benefits for those who cannot work due to medical impairments. And while it's obviously regrettable that it may take some time for him to get to treatment, the Act simply doesn't provide in the national program here a separate standard for weighing the claims of someone who lives in a rural area versus those who live in a more highly popular area. Because the fact is, this evidence with all the benign findings in this particular case, where when plaintiff actually does go to the doctor, the findings are relatively benign during the relevant period, it simply is not a factor that we think the court should consider as relevant in this case. But there's nothing in the Act that would prevent an ALJ from considering when asking, why didn't you get medical treatment? Well, I live two hours, three hours, an hour and a half from the facilities that would treat me. I'm indigent. Gas prices are high. I don't have anyone to drive me. I mean, I could imagine a lot of factors that while may not be dispositive, I can't imagine that they wouldn't be relevant in some situations. Certainly, Your Honor. I think your point's well taken. However, I think under the facts of this particular case, there's no evidence that plaintiff was even making the effort to try to seek out treatment despite his allegations of disabling pain. And therefore, under the facts of this particular case, there may be facts in other cases, but under the facts of this particular case, there's just not evidence that. When we read the record, will we find questions about this or not? We haven't read the record. I only read the briefs. Concerning the geography? Yeah. And how close medical care was? Is it there or not? No. There aren't specific questions about that. But it's our position that that wouldn't affect the ALJ's consideration of credibility here, to be clear. And briefly, I see I'm almost out of time. Considering the plaintiff's argument that the ALJ failed to adequately develop the record in this case, clearly with all the evidence that the ALJ considered and all the proper credibility factors, there was substantial evidence. He had enough evidence already in front of him to make the decision, so there was no need to further develop the record. And moreover, because of the fact that the evidence that the plaintiff submitted to the district court in the first instance was temporarily related to after the relevant time period and was merely cumulative to evidence that was already in the record, as I believe we touched on during Mr. Kraft's presentation, it doesn't help him. What about the motion to remand under either 4 or 6 of Section 405G? Well, as far as the sentence forbit motion, really what plaintiff is asking for here is he's claiming that the ALJ failed to develop the record, and therefore this evidence they submitted to the district court shows the prejudice from that failure to adequately develop the record, if I'm understanding it correctly. And as I was just outlining, the fact that the evidence, well, first we say that the ALJ already did adequately develop the record, but even if he didn't, plaintiff has the burden to show prejudice from that failure to develop, and that this evidence, because both temporarily it's after the relevant time period and because it's merely cumulative to evidence that was already in front of the ALJ, it doesn't help him get there. So that's the sentence 4. And as far as the sentence 6, plaintiff had under 442 U.S.C. 405G, plaintiff has to show that this evidence was both material to his claim and that he had good cause for his failure to incorporate it in front of the commissioner earlier during the administrative process. And for all the reasons we already discussed, it wasn't material to his claim for the temporal and the cumulative basis. And as far as the good cause element, the plaintiff must also show, as the district court correctly ruled below, there was simply no good cause in this case for plaintiff's failure to present this evidence until it was attached to the motion to remand, I believe, more than a week after the briefs on the merits had already been entirely completed in the district court. And, therefore, the district court did not abuse its discretion in denying that motion. And we ask the court to, as I see, I'm definitely out of time. If the court has no further questions. I think we know what you want. So thank you for your argument. Thank you. We'll see. Mr. Krause has, we'll give you one minute. Thank you. I'll see how much I can cover. As far as the self-reported activities, I think if you look at the report where he says he can lift 50 pounds, he also says, I spend the majority of the day laying around. He can't do it all day, every day, as expected by employers, as noted by the commissioner and this court. As far as good cause, the ALJ is required under Social Security Ruling 96-7P, kissling from this court and many other decisions that have to make an express finding that it does not have good cause for not seeking the treatment. The ALJ did not address that. I'd also note that the informal paupers filed in district court noted $500 in medical debts and $10,000 in other debts. Finally, I would note that the good cause requirement of Sentence 6 does not apply to Sentence 4, and as far as the Sentence 6 is concerned, I didn't have the medical records. I had five pages of medical records until two-and-a-half months before we submitted. I obtained the report, filed the motion, and drafted the memo in two-and-a-half months. I don't think I was deleterious. Thank you. Thank you very much. We thank you for your arguments, and we will be back to you in due course.